UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

BRANDON MORRIS                  )
                                )
        Petitioner,             )       Case Nos.       1:14-cv-31-HSM-WBC
                                )                       1:12-cr-91-1-HSM-WBC
v.                              )
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )
                                )

## MEMORANDUM OPINION

On March 25, 2013, Petitioner Brandon Morris ("Petitioner") was sentenced to eighty-

seven months' imprisonment for conspiracy to manufacture and distribute twenty-eight grams or

more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).

(Doc. 56).[1] He subsequently filed a *pro se* motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). (Doc. 65). For the reasons that follow, the

Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion

shall be **DENIED**.

## I.      STANDARD of REVIEW

### A.      Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or

correct his judgment of conviction and sentence, if he claims that the sentence was imposed in

violation of the Constitution or laws of the United States; that the court lacked jurisdiction to

impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is

otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief

---

[1] All citations to the district court record are to the docket of Case No. 1:12-cr-91-1, which is the underlying criminal case.

under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid.  *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief."  *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)).  If the motion is not summarily dismissed under Rule 4(b), Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).  An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record,

2

inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333

(quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

### B. Standard for Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel issues. Ineffective assistance of

counsel is a recognized constitutional violation that, when adequately shown, warrants relief

under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687

(1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255.

*Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). That test provides that, to demonstrate

a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must

establish that his attorney's performance was deficient and that the deficient performance

prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by

demonstrating that counsel's "representation fell below an objective standard of reasonableness."

*Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific

guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure

of attorney performance remains simply reasonableness under prevailing professional norms."

*Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521

(2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from counsel's
> perspective at the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the defendant

3

must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Moreover, absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal quotation marks and citations omitted). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations

in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977).

## II.    BACKGROUND

On July 24, 2012, Petitioner was indicted in a multi-count Indictment (Doc. 3) for: (1) Count One: conspiracy to manufacture and distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); (2) Counts Two and Three: distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(C); (3) Count Four: aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(C), and 18 U.S.C. § 2; (4) Count Seven: possession of a firearm and ammunition by one previously convicted in court of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. 922(g)(9); and (5) Count Nine: knowingly and intentionally using a building/residence for the purpose of unlawfully manufacturing, storing, and distributing cocaine base, in violation of 21 U.S.C. 856(a)(2). (Doc. 3 at 1–4). The United States also charged that Counts One, Two, Three, Four, and Nine of the Indictment subjected Petitioner to the forfeiture of his residence, the Real Property located at 3711 Sumter Avenue, Chattanooga, Tennessee, 37406 (the "Chattanooga Residence"). (*Id.* at 4–5). The following facts are obtained from the factual basis of Petitioner's Plea Agreement to which the Petitioner stipulated when he signed the Plea Agreement on November 24, 2012, (Doc. 38 at 2–3, 10):

On March 20, 2012, a Confidential Informant ("CI"), acting under the direction of law enforcement officials, purchased 14.27 grams of cocaine base from Petitioner at his Chattanooga Residence. (*Id.* at 2). The purchase was recorded on audio and video. (*Id.*). On March 22, 2012, a CI purchased 13.46 grams of cocaine base from Petitioner at his Chattanooga Residence. (*Id.*).

This transaction was also audio- and video-recorded. (*Id.*). On April 3, 2012, law enforcement officials again used a CI to purchase cocaine base from Petitioner at his Chattanooga Residence. Petitioner went to co-defendant Michael Evans' residence to get the cocaine base. Petitioner procured an ounce of cocaine base from Evans, and sold ½ ounce to the CI. This purchase was also recorded on audio and video. (*Id.* at 3). Finally, on April 10 and May 30, 2012, law enforcement officials used a CI to purchase approximately twenty grams and three grams of cocaine base, respectively, from Evans. Petitioner was present with Evans during both of these sales and, consistent with prior practice, both purchases were audio- and video-recorded. (*Id.*).

On June 4, 2012, law enforcement officials executed federal search warrants on Petitioner's Chattanooga Residence, on Evans' residence, and on Evans' mother's residence. At Petitioner's Chattanooga Residence, they found a loaded Smith and Wesson pistol and drug paraphernalia. At the Evans residence, they found two firearms, a marijuana blunt, four additional grams of marijuana and rolling papers, and approximately $1,300.00 in cash. (*Id.*).

As part of the Plea Agreement, Petitioner specifically admitted that he owned the Smith and Wesson pistol found at his Chattanooga Residence, that he "conspired with Evans and others to manufacture and distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack")," and that he "agree[d] to forfeit [his] interest in" the Chattanooga Residence.  (*Id.* at 3, 6). Petitioner also agreed to waive his right to file a direct appeal except the right to appeal a sentence imposed above the Sentencing Guidelines range or any applicable mandatory minimum. (*Id.* at 8). He also agreed to waive the right to file any pleadings under 28 U.S.C. § 2255 except for claims of ineffective assistance of counsel or prosecutorial misconduct. (*Id.*). In exchange for Petitioner's guilty plea to Count One, the government agreed to move for dismissal of Counts Two, Three, Four, Seven, and Nine against

Petitioner. (*Id.* at 1). The government also agreed to a three level reduction in Petitioner's Sentencing Guidelines calculation for acceptance of responsibility. (*Id.* at 5). The Plea Agreement advised that Petitioner, by agreeing to it, waived, *inter alia*, his right to present evidence to a jury, to testify on his own behalf, and to confront and cross-examine witnesses against him. (*Id.* at 4). Finally, the Plea Agreement specifically advised Petitioner that Count One of the Indictment carried a punishment of "[i]mprisonment for a term of not less than five years up to a maximum of forty years; fine of up to $2,000,000; supervised release for at least four years and up to life; any lawful restitution; and a $100 special assessment." (*Id.* at 1).

Pursuant to the written Plea Agreement, Petitioner pleaded guilty to Count One of the Indictment on December 18, 2012 before United States Magistrate Judge William B. Carter.[2] (Doc. 70 at 21). After being placed under oath, Petitioner testified that he attended school through the eleventh grade, that he could read and write, and that he had been treated for addiction to narcotic drugs as "an adolescent" but was not at the time of his rearraignment on any medication (*Id.* at 4–5). He was then asked if he had enough time to talk with his lawyer about the indictment, and in particular Count One. (*Id.* at 6). Petitioner stated that he had, and also stated that he was satisfied with his lawyer's representation. He was then advised that by pleading guilty, he was waiving his right to a jury trial in which the government would have to prove beyond a reasonable doubt all of the elements of the charges against him, and that he was also waiving the right to present evidence and to cross-examine witnesses. (*Id.* at 6–8).

Magistrate Judge Carter then turned his attention to the Plea Agreement. At the outset, he asked if anyone had forced Petitioner or threatened him in any way to enter his guilty plea. Petitioner answered "[n]o." (*Id.* at 10). Next, he addressed specific paragraphs in the Plea

---

[2] Magistrate Judge Carter recommended that the Court accept Petitioner's guilty plea. (Doc. 36). The Court accepted and adopted Magistrate Judge Carter's Report and Recommendation on January 8, 2013. (Doc. 42).

Agreement. First, he explained that the government had agreed to a three level reduction for acceptance of responsibility, and that this would be incorporated into the Presentence Investigation Report ("PSR"). Judge Carter then explained the process of the drafting of the PSR, and that Petitioner had the right to object to any findings with which he disagreed. (*Id.* at 11–12). Petitioner testified that he understood. (*Id.* at 12). Second, Judge Carter explained the appellate waivers in the Plea Agreement. He specifically advised Petitioner that he was waiving his right to file a direct appeal of his sentence unless the sentence imposed was above the Sentencing Guidelines range. He also explained that Petitioner was waiving his right to file motions under 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel and prosecutorial misconduct. Petitioner testified that he understood the appellate waiver provisions of the Plea Agreement. (*Id.* at 12–13). Third, Judge Carter asked Petitioner if "any agent or officer of the government *or anybody else* promised any form of leniency or a lighter sentence if [he] would plead guilty," or if "anybody made any promises outside of the plea agreement." (*Id.* at 14). Petitioner responded, "[n]o." (*Id.*).

The government then reviewed for Petitioner each element of the crime for which Petitioner was charged in Count One. When asked if he understood that those elements are what the government would have to prove to a jury beyond a reasonable doubt, Petitioner responded that he did. (*Id.* at 15–16). After referencing the range of punishment previously explained to Petitioner,[3] Judge Carter advised Petitioner of certain civil consequences of pleading guilty. Petitioner stated that he understood those consequences. (*Id.* at 16–17). Judge Carter then again explained the PSR-writing process, Petitioner's right to file objections, and that "there are circumstances where [the district judge] could sentence [Petitioner] above the guideline range

---

[3] Earlier at the same hearing, the government advised Petitioner that for Count One, "there is a minimum term of imprisonment of five years up to a maximum of 40, so between five and 40 years in prison, potentially a fine of up to two million dollars." (Doc. 70 at 4).

and/or below the guideline range." (*Id.* at 18–19). Petitioner testified that he understood. (*Id.* at 19). Next, Judge Carter again explained that Petitioner had waived the right to appeal if the sentence was within or below the guideline range, and Petitioner stated that he understood. (*Id.*). Finally, Judge Carter confirmed with Petitioner that he agreed to the factual basis in the Plea Agreement, and asked Petitioner if he was offering to plead guilty because he was "in fact guilty." Petitioner testified in the affirmative. (*Id.* at 20–21).

On March 25, 2013, Petitioner was sentenced to eighty-seven months' imprisonment, at the top of his Sentencing Guideline range. (Doc. 56 at 1). Petitioner did not file a direct appeal, but instead filed the instant 2255 Motion on January 15, 2014. (Doc. 65).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Petitioner has alleged a myriad of claims of ineffective assistance of counsel. The Court, like the Government in its brief, (Doc. 71), will address Petitioner's claims based on the stage of the proceedings to which his claims relate.

#### 1. Failure to File Motions to Suppress

First, Petitioner argues that counsel was ineffective for failing to file pre-guilty-plea motions to suppress. Specifically, Petitioner claims that counsel should have: (1) moved to suppress evidence of the drug sales; (2) investigated the affidavit in support of the Government's search warrant and attacked the veracity thereof; (3) moved to suppress the fruits of the Government's search; and (4) investigated statements made by the confidential informant, with whom Petitioner alleges that he had a previous romantic relationship. (Doc. 66 at 9–13).

With regards to his first three arguments, Petitioner has failed to articulate any basis, factual or legal, upon which the evidence of his drug sales, or the evidence obtained as a result of

the Government's search warrants, could be suppressed. This, of course, is fatal to his claim, because "[a] motion under section 2255 must consist of something more than legal conclusions unsupported by factual allegations." *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). Because failure to bring a meritless suppression motion does not constitute ineffective assistance of counsel, Petitioner's claim fails. *See Brown v. McKee*, 231 F. App'x 469, 475 (6th Cir. 2007) (citing *United States v. Tisdale*, 195 F.3d 70, 73–74 (2d Cir. 1999)); *see also Howard v. Bouchard*, 405 F.3d 459, 481 (6th Cir. 2005) ("Howard cannot establish prejudice under *Strickland*, because he cannot show that a motion to exclude Chorney's and Carter's identifications would have succeeded.").

Petitioner further argues that his counsel was constitutionally ineffective because he failed to investigate the Government's Confidential Informant ("CI"). (Doc. 66 at 10). Had counsel done so, Petitioner argues, "there is no doubt the outcome of the proceedings would have been different." (*Id.*). In support, Petitioner cites *Towns v. Smith*, wherein the Sixth Circuit found that counsel's failure to investigate a potential witness amounted to ineffective assistance of counsel. 395 F.3d 251, 258–61 (6th Cir. 2005). *Towns*, however, is easily distinguishable from the present case because in that case the petitioner's counsel failed to investigate a known witness who "ha[d] consistently maintained to the police and to others that [the petitioner] was not involved in the crimes for which [the petitioner] was convicted, and that [the witness] had been willing to testify to that effect at [the petitioner's] 1983 trial." *Id.* at 260. Accordingly, the Sixth Circuit found that it was both unreasonable for petitioner's counsel to not investigate this witness, and that there was a reasonable probability that, but for counsel's error, the petitioner would have been acquitted. *Id.* at 259–61.

Here, Petitioner's only factual statement about the CI is that the CI "had a previous romantic relationship with [Petitioner.]" (Doc. 66 at 10). Petitioner does not allege that the CI would have presented exculpatory evidence of any kind. Indeed, the CI audio- and video-recorded the drug sales in question, thus making any such allegation wholly incredible. Even accepting Petitioner's claim, i.e. that his counsel did not "investigate" the CI, as true, the Court concludes that such a decision was eminently reasonable. *Towns*, 395 F.3d at 258 ("It is well-established that '[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'") (quoting *Strickland*, 466 U.S. at 691)); *see also Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, *applying a heavy measure of deference to counsel's judgments*.") (emphasis added). Moreover, Petitioner has failed to argue, aside from a conclusory statement, that had counsel investigated the CI, the result of the proceedings would have been different. As previously noted, the Court need not accept Petitioner's legal conclusions. *Valentine*, 488 F.3d at 333. Because Petitioner's claim for ineffective assistance of counsel regarding counsel's alleged failure to investigate the CI fails to meet either prong of the *Strickland* test, his claim must fail.

### 2. Plea Negotiations

Next, Petitioner argues that counsel was ineffective at the plea negotiation stage because: (1) counsel failed to negotiate for more "bargain" in the plea agreement, especially with regards to its appellate waiver and forfeiture clauses; (2) counsel both allowed Petitioner to waive certain appellate rights and counsel failed to inform Petitioner of the appellate waiver provisions; (3) counsel overstated the risks associated with his case and thereby pressured Petitioner into

pleading guilty; and (4) counsel failed to review discovery with Petitioner before allowing him to plead guilty. (Doc. 66 at 12–15).

Petitioner's claim that counsel was ineffective for failing to negotiate a better plea agreement is without merit for the simple reason that Petitioner has no constitutional right to a plea agreement. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *see also United States v. Jones*, 2015 WL 2342867 at *8 (E.D. Ky. May 14, 2015) ("However, the failure to negotiate a different plea agreement may be characterized as trial strategy that does not constitute ineffective assistance of counsel. Further, Defendant has not pointed to any authority holding that the failure of counsel to negotiate a different or better plea agreement amounts to a deviation from reasonable professional assistance.") (citations omitted). Moreover, Petitioner has failed even to allege that the Government would have been willing to accept a plea agreement more favorable to Petitioner. In fact, the Government expressly notes in its brief that "[t]he United States is not required to acquiesce to a petitioner's requests, and neither petitioner nor his attorney could have compelled the government to agree to an agreement that petitioner now deems favorable to him." (Doc. 71 at 6). Accordingly, Petitioner cannot show prejudice under *Strickland*. *Jones*, 2015 WL 2342867 at *9 ("Further, Defendant has put forth no evidence that the government would have negotiated a different plea agreement with him, nor has he shown that this hypothetical, different plea agreement would be more favorable to him than the one negotiated by counsel. Thus, Defendant has also failed to prove prejudice under *Strickland*."). Accordingly, Petitioner's first claim fails.

Petitioner also claims that counsel was ineffective for failing to inform Petitioner of the appellate waiver provisions of his plea agreement, and for pressuring him into pleading guilty. The Court rejects both claims because, on this record, they are wholly incredible. At Petitioner's

plea colloquy, Magistrate Judge Carter specifically asked Petitioner if he had reviewed the Plea Agreement with his lawyer. Petitioner responded that he had. (Doc. 70 at 11). Magistrate Judge Carter even went a step further by explaining in detail the Plea Agreement's appellate waiver provisions. When asked if he understood those provisions, Petitioner responded that he did. (*Id.* at 12–13). Finally, Magistrate Judge Carter asked Petitioner if anyone had forced him or threatened him in any way to make him enter a guilty plea. Petitioner responded in the negative. (*Id.* at 10). As articulated *supra* Part I.B, Petitioner's sworn statements during his plea colloquy are binding. Because "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, and because Petitioner has advanced no more than conclusory allegations to contravene his sworn statements, his claims are without merit. *Id.* ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Finally, Petitioner claims that counsel was ineffective for failing to review discovery with Petitioner prior to Petitioner entering a guilty plea. (Doc. 66 at 15). Specifically, Petitioner claims that "[t]he Alleged Video of the Drug Sales were never disclosed to the Movant and thus not able to be properly attacked as valid or invalid." (*Id.*) (capitalization in original). To the extent that Petitioner faults his counsel for failing to file a motion to suppress these videos, this claim has already been rejected. *See supra* Part III.A.1. Furthermore, it is unclear to the Court how any such disclosure would have altered the proceedings in any meaningful way. Petitioner, being present at the time and place in which the audio and video recordings were made, was in the best position to know exactly what happened during the drug sales. *See, e.g.*, *United States v. Socolovitch*, 340 F. App'x 291, 296 (6th Cir. 2009) ("Although the government was in the best position to know the *provable* amount of loss, Socolovitch was in the best position to know the

*actual* amount of loss . . . Socolovitch would not have entered into the plea agreement if he did not *know* that the actual amount of loss exceeded $70,000.") (emphasis in original). Notwithstanding this knowledge, Petitioner agreed in open court with the factual basis presented in the Plea Agreement, which was largely based on the audio and video recordings. (Doc. 70 at 20–21). Because Petitioner has failed to show that counsel's failure to disclose the audio and video recordings caused him any prejudice, his ineffective assistance of counsel claim fails. *See Strickland*, 466 U.S. at 687.

### 3. Sentencing

Petitioner also argues that counsel was ineffective at the sentencing stage. Specifically, Petitioner claims that: (1) counsel improperly advised him regarding his advisory guideline range; (2) counsel failed to file a motion for downward departure; (3) counsel failed to review and object to inaccuracies in the Presentence Investigation Report ("PSR"); and (4) Petitioner was not provided a copy of the PSR in a timely fashion. (Doc. 66 at 14–16). Each claim will be discussed in turn.

Petitioner's claim that counsel improperly advised him regarding his advisory guideline range does not amount to ineffective assistance of counsel. It is well-established that "an inaccurate guideline-range prediction by an attorney will generally not meet the requirement of deficient performance under *Strickland*." *United States v. Elliott*, 2011 WL 1793385 at *10 (E.D. Ky. Mar. 16, 2011) (citing *Thomas v. United States*, 27 F.3d 321, 325–26 (8th Cir. 1994)). Here, Petitioner claims that counsel led him to believe that he would receive the mandatory minimum sentence of sixty months, as opposed to his ultimate sentence of eighty-seven months (at the top of his seventy to eighty-seven month guideline range). In *Elliott*, the movant's attorney failed to predict a career offender enhancement that subjected the defendant to a guideline range of 262 to

327 months, as opposed to 121 to 151 months absent the enhancement—an oversight of significantly greater magnitude than is present in the case at bar. *Id.* at *3. Nevertheless, the court found that counsel's conduct did not amount to ineffective assistance of counsel, especially because at an earlier stage in the proceedings, the court had explained to the defendant the consequences of pleading guilty. *Id.* at *10 ("In sum, an attorney's inaccurate attempt at predicting a movant's Guideline range does not constitute ineffective assistance of counsel, especially where the court fully explains the consequences of pleading guilty."). In the present case, Magistrate Judge Carter fully explained to Petitioner the consequences of his guilty plea, and the Government informed Petitioner of the maximum penalties he faced. Petitioner said that he understood. (Doc. 70 at 4, 11–12). Accordingly, Petitioner's ineffective assistance of counsel claim is without merit.[4]

Second, Petitioner argues that counsel was ineffective for failing to file a motion for downward departure. (Doc. 66 at 16). As in his argument regarding motions to suppress, however, Petitioner fails to allege any factual or legal basis upon which a motion for downward departure would have been successful. Again, failure to bring a meritless motion does not amount to ineffective assistance of counsel. *Brown*, 231 F. App'x at 475. It is also worth noting that Petitioner's counsel did, in fact, file a sentencing memorandum in which counsel outlined Petitioner's acceptance of responsibility, his father's absence from his life, his mother's death, and his family's letters of support. Ultimately, Petitioner's counsel requested a sentence at the

---

[4] Moreover, Petitioner's Plea Agreement explicitly stated that "[a]ny estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s)." (Doc. 38 at 4). Accordingly, to the extent that Petitioner argues that his plea was not knowing or voluntary as a result of counsel's alleged misrepresentation of Petitioner's guideline range, his claim is without merit. See United States v. Contreras-Armendariz, 207 F. App'x 594, 597 (6th Cir. 2006) ("The record reflects that Contreras had a full understanding of the direct consequences of his plea, including the fact that he could not withdraw that plea in the event that his counsel's predictions regarding the applicable guidelines range were incorrect, and that his plea represented a voluntary and intelligent choice among the alternatives he faced. The claim that his plea was not knowing and voluntary is wholly without merit.").

bottom of the guideline range. (*See generally* Doc. 52). Accordingly, Petitioner's claim that his counsel's errors deprived the Court of such information at sentencing, (Doc. 66 at 16), is wholly unsupported by the record.

Third, Petitioner argues that his counsel ineffectively failed to review the PSR and object to its contents. Specifically, Petitioner states that "[b]y the Attorney not requesting discovery and not objecting to the facts the Government wanted in the Plea Agreement, the United States District Court automatically was able to set and [sic] enhancement off of the conduct mentioned in the Plea and PSR." (*Id.* at 15). Again, however, Petitioner fails to identify any legitimate grounds upon which counsel could have objected to the PSR. While Petitioner claims that counsel should have objected to the firearm enhancement and the drug weight calculation, Petitioner fails to comprehend that the facts establishing said enhancement and calculation were explicitly established in the factual basis section of Petitioner's plea agreement. (Doc. 38 at 3). Magistrate Judge Carter asked Petitioner if he had reviewed the factual basis at his December 18, 2012 plea colloquy, and Petitioner stated that he had and that he agreed with the facts as stated therein. (Doc. 70 at 20–21). Petitioner cannot now claim, in a conclusory fashion, that counsel should have objected to facts to which Petitioner stipulated in open court. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Finally, Petitioner claims that counsel was ineffective for failing to provide Petitioner a copy of his PSR thirty-five days before his sentencing hearing. (Doc. 66 at 15). Fed. R. Crim. P. 32(e)(2) provides that "[t]he probation officer must give the presentence report to the defendant . . . at least 35 days before sentencing unless the defendant waives this minimum period." While

district courts must be in "literal compliance" with Rule 32, violations are reviewed for harmless error. *See United States v. Marrero*, 651 F.3d 453, 473 (6th Cir. 2011) ("Remand is required unless the error 'did not cause the defendant to receive a more severe sentence.'") (quoting *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007)). Petitioner's claim fails for two reasons. First, at his March 25, 2013 sentencing hearing, Petitioner was asked "have you reviewed the presentence investigation report in your case and have you discussed it with your attorney?" (Doc. 90 at 3). Petitioner responded "[y]es." (*Id.*). Accordingly, Petitioner's claim that he was somehow prejudiced by a lack of time to review the PSR is flatly contradicted by the record. Second, aside from the objections noted and rejected above, Petitioner has failed to identify any inaccuracies in the PSR. Therefore, even assuming that there was an error in this case, it did not cause Petitioner to receive a more severe sentence. Accordingly, any such error was harmless, and Petitioner's alleged Rule 32 violation does not entitle him to the extraordinary relief he seeks. *Marrero*, 651 F.3d at 473.

### 4. Direct Appeal

Petitioner's final argument that his counsel was constitutionally ineffective is grounded in counsel's failure to file a direct appeal. (Doc. 66 at 13–14). This argument, however, is merely an attempt to recast Petitioner's argument that counsel was ineffective for allowing Petitioner to waive his appellate rights through the Plea Agreement. As discussed at-length, *supra* Part III.A.2, this argument is without merit. At Petitioner's plea colloquy, Magistrate Judge Carter explicitly explained to Petitioner the appellate waiver provision of his Plea Agreement, and Petitioner stated that he understood. (Doc. 70 at 12–13). Petitioner thus cannot legitimately challenge the validity of his appellate waiver. *See Blackledge*, 431 U.S. at 74. Accordingly, his claim that counsel was ineffective for failing to file a direct appeal is without merit. *See, e.g.*,

*United States v. Cabrales-Peralta*, 2009 WL 1116330 at *7 (E.D. Ky. Apr. 24, 2009) ("Cabrales does not legitimately challenge the validity of the appellate waiver, and the provision specifically bars the right to appeal. Therefore, Defendant cannot premise a claim for relief on failure to appeal when Cabrales properly waived any appellate rights. Relief under *Strickland* simply is not possible.").

### B.    Claims Regarding the Propriety of Petitioner's Sentence

Petitioner next claims that his criminal history score is "egregiously overrepresented,"[5] and that he should not have been sentenced to serve a term of eighty-seven months' imprisonment. (Doc. 66 at 16). Specifically, Petitioner states that "[c]ounsel should have argued for a Downward Departure, as well as this United States District Court should have recognized the need to Depart Downward due to the Over representation of his Prior Criminal History." (*Id.*) (capitalization in original). To the extent Petitioner alleges that counsel was ineffective for failing to file a motion for downward departure, this claim has been considered and rejected elsewhere in this memorandum opinion. *See supra* Part III.A.3. Moreover, Petitioner's belief that this Court should have granted a downward departure is not grounds for relief under 28 U.S.C. § 2255. *See, e.g.*, *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996) ("A brief consideration of the policy underlying collateral review demonstrates that nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside the normal appellate system."). Because Petitioner has failed to allege—and the record is devoid of—any such

---

[5] It is worth noting that, contrary to Petitioner's point of view, Petitioner's criminal history score actually *underrepresents* Petitioner's criminal history. While Petitioner's criminal convictions resulted in a subtotal criminal history score of eight, only four points were counted pursuant to USSG § 4A1.1(c). (Doc. 89 at 11).

defects, Petitioner's claim that this Court should have varied downward does not justify relief under § 2255.

## C.    Petitioner's Advisory Guideline Range

Petitioner also claims that "the United States District Court committed plain error when it sentenced Movant Morris, by treating the guidelines as mandatory." (Doc. 66 at 17). While it is true that the sentencing guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 245 (2005), a brief review of the record disposes of Petitioner's claim.   At Petitioner's sentencing hearing, the Court considered the mitigating factors raised in Petitioner's sentencing memorandum. (Doc. 90 at 5–8). It also considered Petitioner's prior criminal history, and characterized his nine prior assault convictions as "extraordinary." (*Id.* at 9). Ultimately, the Court concluded that it would sentence Petitioner to the top of his guideline range "in light of the violent conduct that's reflected in [Petitioner's] criminal history." (*Id.* at 11). The Court also explicitly noted that it had "considered the nature and circumstances of the offense, the history and characteristics of the defendant, and the *advisory* guideline range, as well as the other factors listed in Title 18, United States Code, Section 3553(a)." (*Id.* at 11–12) (emphasis added). In short, there is absolutely no evidence on the record that the Court treated the guidelines as mandatory. Indeed, the record reflects the exact opposite. Accordingly, Petitioner's claim is without merit.

Petitioner also appears to bring a claim under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), arguing that "[d]ue to the fact that Movant neither stipulated to the enhancement, nor was he found guilty of such conduct by a petit jury, there should be no question of Movant's entitlement to a re-sentencing hearing." (Doc. 66 at 18). Petitioner's claim fails for two reasons. First, *Alleyne* does not apply retroactively to cases on collateral review. This claim is thus not

cognizable under § 2255. *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014) ("We now hold that *Alleyne* does not apply retroactively to cases on collateral review."). Second, *Alleyne* is inapplicable to the case at bar. In *Alleyne*, the Supreme Court of the United States held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155. In this case, the Court's findings did not increase any *statutorily authorized* penalty, but rather increased Petitioner's *advisory guideline range*. Accordingly, even if *Alleyne* applied retroactively on collateral review, it would not provide Petitioner an avenue for relief.

### D. Evidentiary Hearing

Finally, Petitioner claims that he is entitled to an evidentiary hearing to resolve factual disputes. (Doc. 66 at 20). As previously noted, however, an evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo*, 178 F.3d at 782). The Court finds that, for the reasons articulated above, Petitioner is not entitled to an evidentiary hearing because all of his claims are either contradicted by the record or consist merely of conclusory statements devoid of supporting facts.

## IV. CONCLUSION

The Court has reviewed this 2255 Motion carefully and finds that there is no merit in Petitioner's claims. For the reasons stated herein, the Court finds that no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is necessary. The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief. The 2255 Motion (Doc. 65) is therefore **DENIED**.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.


_____/s/ Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE